Godeau *v.* Blood.

JOHN GODEAU BY NEXT FRIEND, *v.* CHARLES BLOOD.

*Keeping of Ferocious Animals. Damages. Charge.*

In case for the bite of a dog it need not be proved that the dog had previously bitten mankind. It is sufficient to prove that the dog was of a ferocious nature, and that its keeper, from his knowledge thereof, had reason to apprehend that under some circumstances it would bite mankind.

The evidence tended to prove that the dog was of a ferocious nature, and that its keeper had been told by his neighbors that it was unsafe to allow it to run at large, and had kept it confined a part of the time, and muzzled a part of the time when he had allowed it to run at large. *Held,* that there was evidence tending to show that the dog had the habit of biting mankind to the knowledge of its keeper.

There was no evidence that the dog was rabid, but the court, after charging that plaintiff was entitled to recover for all the pain and anguish he had personally suffered, and for that only, charged in effect that one who had been bitten by a dog must lead a considerable portion of his life under an apprehension not pleasant to reflect upon, as one who had been bitten by a dog not known to be rabid, would sometimes, after a considerable time, die of hydrophobia, and that whether there was any indication of such a result in this case, no one could presently tell. *Held,* that all pain and solicitude occasioned by the bite, including apprehension of poison and of evil results therefrom, were proper matters for consideration, and that there was no error.

CASE for the bite of a dog. Trial by jury, September Term, 1879, PIERPOINT, C. J., presiding.

The evidence introduced on the part of the plaintiff tended to show that the dog, a bull-terrier that was being kept by the defendant at his store in the city of Burlington, bit the plaintiff, a lad thirteen or fourteen years of age, in three several places, as he was going along the street in the village of Winooski, and in-

flicted several troublesome wounds, by which he was incapacitated from work for a considerable space of time. There was no direct evidence that the dog had ever before bitten mankind; but there was evidence tending to prove that he had been known in one instance to attack a horse without provocation, as he was being led from a stable, and to bite him twice in the breast, and there was much evidence tending to prove that he was accustomed to attack other dogs without provocation as they passed the place where he was kept; that the neighbors and customers of the defendant had frequently called on the defendant to restrain the dog as unfit and unsafe to be at large; that the defendant had kept the dog confined much of the time, and, when he had suffered him to run at large, had kept him muzzled a part of the time; and that the dog was exceptionally ferocious—one of the witnesses describing him as "the most wickedest kind of a dog."

After the evidence was all in, the defendant requested the court to direct a verdict for him, but the court refused, to which the defendant excepted.

The court charged that the plaintiff was entitled to recover for all the injury he had personally sustained, all the pain and anguish he had personally suffered, by reason of the biting, and for that only. It also charged that it was no slight thing for a lad to be so bitten, such wounds being dangerous in a variety of ways; that life was often taken by such injuries, and that when the time would come, could not be told; that one who had been bitten by a dog "must lead a considerable portion of his life . . . under an apprehension . . . not pleasant to reflect upon," because one who had received such injuries, inflicted by a dog not known to be rabid, would sometimes after a considerable time die of hydrophobia; that whether there was any indication of such a result here, no one could tell—at least not until after a considerable lapse of time. To that portion of the charge embodied in the last sentence the defendant excepted.

*E. F. Brownell* and *W. L. Burnap*, for the defendant.

The court should have directed a verdict as requested. It was not shown that the dog had a propensity to bite mankind, and that

the defendant knew it. 1 Ad. Torts, 229 ; *Kelly* v. *Tilton*, 42 N. Y. 269 ; *Keightlinger* v. *Egan*, 65 Ill. 235 ; *May* v. *Burdett*, 9 A. & E. 101 ; *Smith* v. *Pelah*, 2 Str. 1246. The burden was on plaintiff to prove that, and it could be proved only by proof of instances of an exhibition of a propensity to bite mankind. *Arnold* v. *Norton*, 25 Conn. 92 ; *Smith* v. *Pelah*, *supra*. Proof of a propensity to bite others of its kind, or other animals, was not sufficient. *Keightlinger* v. *Egan*, *supra*.

That portion of the charge that was excepted to related to a subject not before the jury, and was calculated to raise unwarrantable apprehensions, and was therefore erroneous.

*Henry Ballard* and *L. F. Englesby*, for the plaintiff.

The court properly refused to direct a verdict. It was sufficient to show that the dog was of a ferocious nature, and one that would be likely to bite people, if suffered to go at large. Shearm. & Redf. Negl. 231, 234 ; *McCoskill* v. *Elliot*, 5 Strob. 196 ; *Buckley* v. *Leonard*, 4 Denio, 500 ; *Jones* v. *Perry*, 2 Esp. 482. The liability is for keeping such an animal with knowledge of its propensities—not for keeping it negligently. *Laverone* v. *Manginti*, 10 Am. 269.

That part of the charge excepted to was without error.

The opinion of the court was delivered by

REDFIELD, J. ⎰ There was no direct evidence that this dog had ever bitten a person until he bit this plaintiff. There was abundant evidence that the dog was exceptionally fierce and ferocious ; that he fiercely assailed other dogs without provocation ; that he jumped, and fastened his teeth into the breast of a horse while being led from the stable, without any occasion to excite his anger ; that he was cross and menacing on many occasions ; that neighbors had frequently called on the defendant to restrain his dog, as not fit and safe to be at large ; and that, in fact, the defendant had much of the time kept the dog confined and muzzled. ⎰ The court refused to order a verdict for the defendant. We think in this there was no error. The duty which the law casts upon the keeper of a malicious and dangerous domestic animal, is but

the enforcement of a common moral duty, binding upon all men; that a man should so keep and use his own property as not to wrong and injure others. The formula used in text books and in forms given for pleadings in such cases, " accustomed to bite ", does not mean that the keeper of a ferocious dog is exempt from all duty of restraint until the dog has effectually mangled or killed at least one person. But, as he is held to be a man of common vigilance and care, if he had good reason to believe, from his knowledge of the ferocious nature and propensity of the dog, that there was ground to apprehend that he would, under some circumstances, bite a person, then the duty of restraint attached; and to omit it was negligence. / Shearm. & Redf. Negl. 231, 234; *Buckley* v. *Leonard*, 4 Denio, 500. In a populous place like Burlington, where the streets are full of all kinds of people,— children sent on errands, going and returning from school or church, or playing by the wayside,—it is not a light thing that they are in danger of being torn to pieces, as was this plaintiff. Dogs have their rights; but if the jury found this dog to be, as described by one witness, " the most wickedest kind of a dog", as we think is most probable, from the perusal of the evidence, then his right was accurately defined by Chief Justice Lee in *Smith* v. *Pelah*, 2 Str. 1246—" Such a dog should have been hanged on the first notice; the safety of the king's subjects ought not afterwards to be endangered." /

II. But in this case there was legitimate evidence tending to prove that this dog had not only the propensity but habit of biting people, and that known to the keeper. The savage and vicious nature of the dog, and the fact that he was kept chained and muzzled by his keeper are evidence, and, as Chief Justice Denio said, in *Buckley* v. *Leonard*, *supra*, " strong evidence " that the dog was, and was known to be, vicious, and that the safety of the public required his restraint.

III. The apprehension of poison from the bite of the dog, and the fear and solicitude as to evil results therefrom—all pain, anguish, solicitude, *occasioned* by the bite—were proper matters

for consideration by the jury in estimating the damages. And we do not think the Chief Justice erred in calling the attention of the jury to this matter; nor does the verdict indicate that the jury were misled by the manner of it.

*Judgment affirmed.*