2010 VT 45

## Sarah Scheele and Denis Scheele v. Lewis Dustin

[998 A.2d 697]

No. 09-213

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 21, 2010

*David Putter*, Montpelier, and *Heidi Groff* of *Biggam, Fox & Skinner*, Montpelier, for Plaintiffs-Appellants.

*David J. Blythe* of *Blythe & Taylor PLLC*, Northfield, for Defendant-Appellee.

¶ 1. **Skoglund, J.** This case asks the Court to decide the proper measure of damages for the loss of a family dog. Plaintiffs Sarah and Denis Scheele appeal from a judgment denying them recovery for emotional damages for the intentional killing of their pet dog, Shadow. Though plaintiffs recovered $155 in economic damages for the destruction of their property, the issue is whether they are entitled to damages for emotional distress or loss of companionship as a result of Shadow's death. They claim that the real worth of a pet is not merely financial and cannot be measured solely by the replacement value. Thus, they argue, their emotional suffering

— the result of defendant's malicious and intentional acts — warrants noneconomic damages. The Washington Superior Court barred such recovery, holding that Vermont does not recognize noneconomic damages for the malicious destruction of personal property, even when the property is a beloved pet. We affirm.

¶ 2. Plaintiffs brought suit against defendant under an "intentional tort" theory and a claim for "loss of companionship." They demanded economic damages for adoption fees, veterinary bills, and cremation costs; noneconomic damages for mental distress, emotional pain, and destruction of a special relationship; litigation costs; and "further relief, as the Court may deem just and proper, including punitive damages."

¶ 3. Following denial of defendant's motion for summary judgment, the parties waived a jury trial and submitted the case on stipulated facts and damages to the court. What follows is taken directly from the parties' stipulated facts. In July 2003, plaintiffs were visiting from their home in Maryland when they stopped in the parking lot of a church in Northfield, Vermont. While in the lot, their unleashed dog, Shadow, wandered onto an adjacent property. The owner of that property, defendant Lewis Dustin, was sitting on his porch with a pellet gun planning to shoot at squirrels. When Shadow came into his yard, defendant aimed his pellet gun at Shadow and shot, killing Shadow. Shadow had not exhibited any aggressive behavior towards defendant, nor posed any threat to him, nor was defendant in any physical danger at the time he fired his gun at Shadow. Shadow died as a result of a pellet shot to the aorta valve resulting in a hemorrhage. The shooting of Shadow by defendant was intentional and malicious. Plaintiffs stood nearby and observed the impact of the shot on their dog and Shadow's immediate pain and death shortly thereafter.

¶ 4. The parties further stipulated that, as a direct and proximate result of the intentional act of defendant in his shooting at and causing the death of Shadow, plaintiffs suffered severe emotional distress, manifested by recurring nightmares, sleeplessness, periods of sadness, and physical stress. According to the stipulation, plaintiffs also incurred economic and noneconomic damages, including emotional distress and "the destruction of the special relationship that each had with Shadow," as a direct and proximate result of the defendant's intentional conduct.

¶ 5. The parties stipulated that damages for the injuries to each plaintiff totaled over $3,000 as follows: economic damages for Sarah in the amount of $130 and for Denis in the amount of $25; mental-distress and emotional-pain-and-suffering damages for each in the amount of $1,500; and damages for each in the amount of $1,500 for the destruction of the special relationship each had with Shadow, including "the solace, affection, friendship and love" that they shared. Notwithstanding the fact that their amended complaint sought punitive damages, the parties included no mention of such damages in their stipulation submitted to the court. Thus, the trial court presumed them waived and considered only economic and noneconomic damages in rendering judgment.

¶ 6. The court awarded full economic damages for the intentional destruction of property, citing *Economou v. Carpenter*, 124 Vt. 451, 453-54, 207 A.2d 241, 243 (1965) (destruction of another's property constitutes tort of conversion). The court then discussed the propriety of granting noneconomic damages in claims for lost pets and concluded that Vermont law does not provide any recovery for plaintiffs' emotional distress based on the death of their pet dog. The court additionally examined the loss-of-companionship claim, which it correlated to a wrongful death action, and found plaintiffs' request to be preempted by statute. The court explained that "the Legislature has prescribed the sorts of relationships for which damages such as these may be recovered. Those relationships do not include those between pets and their owners."

¶ 7. On appeal, plaintiffs argue the trial court erred in denying them noneconomic damages. They maintain that, as there is no question defendant's intentional acts caused their dog's death and brought about their emotional distress, they are entitled to recover for the resulting noneconomic damages. Toward this end, they request that this Court extend the common law to permit such damages to the degree that they are not otherwise recognized in our jurisprudence. They further argue that the wrongful death statute, 14 V.S.A. § 1491, does not bar their claim for damages based on loss of companionship. Alternatively, they request that this Court recognize a new common law cause of action for malicious injury to a pet dog. Adhering to long standing precedent, we affirm the trial court's decision.

¶ 8. In line with a majority of jurisdictions, Vermont law has traditionally viewed animals, including pets, as a form of personal

property, and this treatment continues up to the present. Compare *McDerment v. Taft*, 83 Vt. 249, 250, 75 A. 276, 276 (1910) ("[D]ogs are recognized by the law as a species of property . . . ."), with *Goodby v. Vetpharm, Inc.*, 2009 VT 52, ¶ 7, 186 Vt. 63, 974 A.2d 1269 ("[C]ommon law generally treats animals as personal property."); see also *Myers v. City of Hartford*, 853 A.2d 621, 626 (Conn. App. Ct. 2004) (noting Connecticut General Statute § 22-350 defines dogs as property); *Kennedy v. Byas*, 867 So. 2d 1195, 1197 (Fla. Dist. Ct. App. 2004) ("While a dog may be considered by many to be a member of the family, under Florida law animals are considered to be personal property." (quotation omitted)); *Nichols v. Sukaro Kennels*, 555 N.W.2d 689, 692 (Iowa 1996) (per curiam) (awarding damages for injury of pet dog in like manner as other property); *Soucek v. Banham*, 524 N.W.2d 478, 481 (Minn. Ct. App. 1994) ("Minnesota law treats pets as property."), *abrogated on other grounds as recognized by Molenaar v. United Cattle Co.*, 553 N.W.2d 424, 428 (Minn. Ct. App. 1996); *Kondaurov v. Kerdasha*, 629 S.E.2d 181, 186-87 (Va. 2006) (recognizing "the law in Virginia, as in most states that have decided the question, regards animals, however beloved, as personal property"); *Rabideau v. City of Racine*, 2001 WI 57, ¶ 5, 627 N.W.2d 795 ("[T]he law categorizes the dog as personal property despite the long relationship between dogs and humans."). Plaintiffs recognize as much in their brief, characterizing this cause of action as "one for destruction of property." Accordingly, we measure available damages resulting from the injury or death of a pet as we would like damages to any other item of personal property: the property's value before the injury less the value after the injury. *Goodby*, 2009 VT 52, ¶ 7; see also *Turgeon v. Schneider*, 150 Vt. 268, 273, 553 A.2d 548, 551 (1988) (upholding award for damaged farm equipment and using same measure for determining damages); *Paska v. Saunders*, 103 Vt. 204, 215, 153 A. 451, 456 (1931) (upholding damages for conversion as "fair market value of all the cattle[] at the time of the taking").

▇ ¶ 9. We have noted in the past that categorizing a beloved pet as mere property fails to recognize that such an animal's "worth is not primarily financial[;] . . . its value derives from the animal's *relationship* with its human companions." *Morgan v. Kroupa*, 167 Vt. 99, 103, 702 A.2d 630, 633 (1997). Indeed, we have suggested that the emotionless economic calculus of property law may not fully compensate a mourning pet owner and that "there

may be a different or more appropriate measure of damages for the tangible loss of pets due to the negligence of others — a measure based on the particular pet's value to its owner." *Goodby*, 2009 VT 52, ¶ 7. Nevertheless, our case law is clear that noneconomic damages — as distinct from alternate means of valuing a pet's monetary worth — are not available in property actions. See *id.* ¶¶ 7-8 (discussing valuation of pets in *Lamare v. North Country Animal League*, 170 Vt. 115, 743 A.2d 598 (1999), and *Morgan*, 167 Vt. 99, 702 A.2d 630).

¶ 10. Last year, in *Goodby v. Vetpharm*, we addressed a case with a substantially similar background to plaintiffs' cause and with a nearly identical prayer for relief. Our reasoning there guides and confirms the resolution of this case. *Goodby* involved claims for emotional damages and loss of companionship stemming from alleged negligent or wanton acts of veterinarians and a pharmaceutical company, which resulted ·in the death of two pet cats. According to the plaintiffs, their cats were being treated for hypertension by the defendant veterinarians when they accidentally received a mislabled medication — manufactured by the defendant pharmaceutical company — containing twenty times the appropriate prescribed dose for their cats. After a series of misdiagnoses, both cats died while in the defendants' care. We affirmed the trial court's denial of the plaintiffs' request for noneconomic damages, including loss of companionship and emotional distress, on the ground that such damages were unavailable for the destruction of a pet because it is type of personal property. *Id.* ¶ 11.

¶ 11. We see no reason to deviate from the sound logic of *Goodby*. Plaintiffs suggest that the circumstances surrounding the death of their dog are so markedly different from those in *Goodby* that its tenets are not binding, distinguishing *Goodby* by highlighting the fact that the claim against the veterinarians and pharmaceutical company sounded in negligence whereas, here, defendant acted with intent and malice when he shot plaintiffs' dog. That distinction, however, does not entitle plaintiffs to noneconomic damages for their property loss.[1] Punitive or exemplary damages are the proper remedy available to a party who

---

[1] We express no opinion on whether defendant's conduct in this case rose to the level of malice and moral culpability necessary to support an award of punitive damages.

has suffered from an intentional and malicious tort. See, e.g., *Green v. LaClair*, 89 Vt. 346, 349, 95 A. 499, 500 (1915) (holding that "the conversion of the bay mare was in reckless and wanton disregard of the rights of the plaintiff, and if [the jury] so found they could in their sound discretion allow exemplary damages"). Indeed, it is precisely in instances of intentional conduct that such damages may be allowed. See *Brueckner v. Norwich University*, 169 Vt. 118, 129, 730 A.2d 1086, 1095 (1999) (punitive damages permitted "where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime" (quotation omitted)).

¶ 12. Previously, this Court affirmed an award of punitive damages in a suit resulting from the intentional and reckless killing of a hunting dog. *Wright v. Clark*, 50 Vt. 130 (1877). In *Wright*, the defendant shot plaintiff's dog while attempting to shoot at a fox. We found "no error in the court's charge [allowing] exemplary damages" so long as the jury "found the defendant 'intentionally and wantonly' . . . shot the dog." *Id.* at 136. Rather than pursue such a claim in the present case, plaintiffs chose to waive their initial prayer for punitive or exemplary damages by omitting the claim from the stipulation and not appealing this presumed waiver. Their tactical decision does not persuade this Court that it should create a new measure of damages for the intentional destruction of a pet.

¶ 13. Other courts, wrestling with similar claims following the death of a pet, through negligence or an intentional act, have reached this same conclusion. In a suit for noneconomic damages where the plaintiff sued an animal control officer for euthanizing the plaintiff's pet without informing the plaintiff or consulting with a veterinarian as required by statute, a Connecticut appeals court noted that "[l]abeling a pet as property fails to describe the emotional value human beings place on the companionship that they enjoy with such an animal. . . . [The term property] inadequately and inaccurately describes the relationship between an individual and his or her pet." *Myers*, 853 A.2d at 626. Yet that court affirmed the suit's dismissal, holding "there is no common-law authority in this state that allows plaintiffs to recover noneconomic damages resulting from a defendant's alleged negligent or intentional act resulting in the death of a pet." *Id.* Likewise, the Wisconsin Supreme Court addressed a suit for emotional damages when the plaintiff's pet dog was killed by city police. The court noted that:

> [W]e are uncomfortable with the law's cold characteriza-
> tion of a dog . . . as mere "property." Labeling a dog
> "property" fails to describe the value human beings place
> upon the companionship that they enjoy with a dog. A
> companion dog is not a fungible item, equivalent to other
> items of personal property.

*Rabideau*, 2001 WI 57, ¶ 3. Nevertheless, after discussing the history of human-dog companionship, the court denied recovery for emotional damages resulting from the dog's death because the plaintiff could not "maintain a claim for the emotional distress caused by negligent damage to her property." *Id.* ¶ 32. The court then examined the plaintiff's claim of intentional infliction of emotional distress and found that, while the officer intentionally shot the dog, there was no evidence to indicate he did so with the intention of causing emotional distress to the plaintiff. *Id.* ¶ 36.

¶ 14. Plaintiffs direct us to several cases from sister jurisdictions that suggest noneconomic damages can be awarded following the wrongful death of a pet, even though considered property. However, these cases are based on jurisprudence unique to the ruling jurisdiction or are otherwise distinguishable.[2] For instance in *Campbell v. Animal Quarantine Station*, the Hawaii Supreme Court awarded emotional damages to the plaintiffs when their pet dog died from heat exposure due to the negligence of personnel at the quarantine station. 632 P.2d 1066 (Haw. 1981). The court, however, based its decision on Hawaii's "unique approach" allowing recovery for "mental distress suffered as the result of the negligent destruction of property." *Id.* at 1071. The Florida Supreme Court in *La Porte v. Associated Independents., Inc.*, upheld the award of damages for mental suffering to a woman who watched a trash collector intentionally hurl a garbage can at her dog; the dog died from its injuries. 163 So. 2d 267 (Fla. 1964). "Without indulging in a discussion" and citing no authority, the Florida court affirmed the compensatory and punitive damage awards because "we feel that the affection of a master for his dog is a very real thing and that the malicious destruction of the pet provides an element of damage for which the owner should

---

[2] Plaintiffs have also cited cases that suggest alternate economic valuation for a pet beyond its fair market value; however, as they stipulated to the claimed economic damages and do not appeal that award, we will not address the question of alternative valuation here.

recover, irrespective of the value of the animal because of its special training such as a Seeing Eye dog or sheep dog." *Id.* at 269. A later Florida case denying a claim for emotional damages based on the negligent death of a dog recognized that the *La Porte* court granted such damages only because of the unique facts in that case and the deliberate, malicious nature of the defendant's action. *Kennedy*, 867 So. 2d at 1197-98. As noted above, punitive damages are available in instances of an intentional and malicious tort.

■ ■ ¶ 15. Absent persuasive precedent,[3] plaintiffs propose that this Court extend the common law to recognize a new cause of action for the wrongful killing of a pet dog. While this Court has and will "change the common law to meet changing needs of the people of this state," we also recognize instances where the issue presented "is better left for legislative resolution." *State v. LeBlanc*, 149 Vt. 141, 145, 540 A.2d 1037, 1040 (1987). Plaintiffs have expressly requested any new cause of action be limited to pet dogs, yet beyond a blanket statement that "dogs love you back" and citation to numerous cultural artifacts, they give no basis for such an arbitrary limitation. As in *Goodby*, here

> [p]laintiffs fail to demonstrate a compelling reason why, as a matter of public policy, the law should offer broader compensation for the loss of a pet than would be available for the loss of a friend, relative, work animal, heirloom or memento — all of which can be prized beyond measure, but for which this state's law does not recognize recovery for sentimental loss.

---

[3] We are unmoved by plaintiffs' citation to a Washington appellate court's decision in *Womack v. Von Rardan*, wherein the plaintiff appealed the trial court's measure of her damages. 135 P.3d 542, 546 (Wash. Ct. App. 2006). The trial court had concluded that the plaintiff's claims for "unliquidated damages" based on the "value of [her cat] and [her] emotional distress, were $5,000." *Id.* at 544 (quotation omitted). On appeal, the plaintiff contended the cat's intrinsic value, his value to her, was the measure of damages. The appellate court affirmed the trial court's award, writing "[f]or the first time in Washington, we hold malicious injury to a pet can support a claim for, and be considered a factor in measuring a person's emotional distress damages." *Id.* at 546. However, the court admitted it could not determine how the trial court divided the $5,000, positing that the trial court "may have intended to combine [the plaintiff's] distress over [the cat's] suffering with the distress she felt over her son's harassment." *Id.* With little analysis or coherence, and citing no authority supporting their spontaneous creation of this unique cause of action, *Womack* provides us with little legal reasoning to follow.

2009 VT 52, ¶ 11; cf. *Rabideau*, 2001 WI 57, ¶ 31 (highlighting concerns about which pet owners could recover damages: "every family member? the owner of record or primary caretaker?"). Here we see no principled basis upon which to define categories of applicable harm or recovery. Moreover, when we have chosen in the past to expand the common law, we have recognized that such changes must still fit "within the doctrine of stare decisis." See *Hay v. Med. Ctr. Hosp. of Vt.*, 145 Vt. 533, 544, 496 A.2d 939, 945 (1985) (quotation omitted). While we do not hew to precedent without regard to the challenges and changing needs of the people of Vermont, we are not persuaded that plaintiffs' cause requires a major shift in the landscape of the common law, especially coming so close upon the heels of our most recent ruling. Thus, as we stated above, our decision in *Goodby* and its predecessors continue to guide us today.[4]

¶ 16. The trial court also noted that Vermont's wrongful death statute precluded any claim plaintiffs might have had for loss of companionship. We agree it was proper to deny recovery under the court's analysis, but do not believe the wrongful death statute applies. Unlike in *Goodby*, plaintiffs here are not requesting that this Court expand 14 V.S.A. § 1491 to permit such recovery for pets. 2009 VT 52, ¶ 9. On appeal, plaintiffs "acknowledge that a dog is personal property" and as such, their loss of companionship claim should not fall within the ambit of the wrongful death statute. See *Mears v. Colvin*, 171 Vt. 655, 657, 768 A.2d 1264, 1267 (2000) (mem.) (noting recovery permitted for loss of companionship related to loss of spouse or child); 14 V.S.A. § 1492(b) ("[I]njuries shall also include the loss of love and companionship of the child and for destruction of the parent-child relationship."); see also *Dubaniewicz v. Houman*, 2006 VT 99, ¶ 6, 180 Vt. 367, 910 A.2d 897 (construing "next of kin" in § 1492(b) to "carry the same meaning as it does in the laws of descent"); see also *Kaufman v. Langhofer*, 222 P.3d 272, 278-79 (Ariz. Ct. App.

---

[4] Other states have chosen to address plaintiffs' concern through the enactment of laws tailored to provide recovery and limit liability. See, e.g., Tenn. Code Ann. § 44-17-403 (limiting noneconomic damage liability for negligent or intentional killing of pet cat or dog to $5,000 and excluding such damages in suits against veterinarians for professional negligence). We note that in the past the Legislature has chosen through statute to increase available damages for the intentional destruction of certain classes of property. See, e.g., 13 V.S.A. § 3606 (treble damages for conversion of trees). We see no reason they could not do so here.

2009) (denying recovery of loss-of-companionship damages for death of pet and listing similar cases).

¶ 17. In holding with the traditional view that the law recognizes animals as a type of property, we are not blind to the special place they hold in our lives. Indeed, pets occupy a legal realm somewhere between chattel and children. Unlike inanimate objects, pet owners do not enjoy unfettered use of their property. The ownership interest in "domestic pets is of a highly qualified nature" due to the legal controls the law imposes. *Lamare*, 170 Vt. at 122, 743 A.2d at 603 (citing statutes dealing with control of animals). The Legislature has dedicated dozens of laws to the appropriate protection and control of animals and shown particular concern for domestic pets. See, e.g., 13 V.S.A. §§ 351-354 (animal cruelty statutes); 20 V.S.A. §§ 3541-3813 (statutes relating to domestic pet control). Such statutes, singling animals out for unique protection, date back well into the last century. See 1862 G.S. ch. 113 § 26 ("Every person who shall cruelly beat or torture any horse or ox, or other animal, whether belonging to himself or not, shall be punished . . . ."). Though at one point designed to protect primarily horses, cattle, sheep and swine — described in a 1933 statute as "all brute creatures," 1933 P.L. § 8498 — our animal protection statutes today circumscribe minimum standards of care for all animals, now defined as "all living sentient creatures, not human beings," 13 V.S.A. § 351(1). Thus, under Vermont law, a person would face no criminal charges for ignoring their garden during a hot, dry summer or overloading a bookshelf to the point of collapse. Yet like treatment of a pet or other animal could result in incarceration or thousands of dollars in fines. See 13 V.S.A. § 352(2) & (4); *id.* § 353 (imposing criminal penalties). Over generations, the Legislature has shaped a complex and comprehensive structure guiding our treatment of animals. This statutory regime lends credence to our position that "[t]he changes plaintiffs request are better presented to the General Assembly," *Goodby*, 2009 VT 52, ¶ 11, and we will continue to look to that body to shape any new cause of action relating to the malicious killing of pets.

¶ 18. We do not doubt plaintiffs had a strong emotional bond with their dog and have suffered by Shadow's untimely death. That said, we adhere to our long-standing precedents in affirming the trial court's ruling.

*Affirmed.*