2014 VT 55

# Michaela and David Martin as Next Best Friends of Gracie Martin v. John W. Christman and Joanna L. Christman

[99 A.3d 1008]

No. 13-250

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed June 13, 2014

*Christopher McVeigh* of *McVeigh ♦ Skiff*, Burlington, for Plaintiffs-Appellants.

*Jeffrey S. Marlin* of *Primmer Piper Eggleston & Cramer PC*, Montpelier, for Defendants-Appellees.

¶ 1. **Crawford, J.** The single issue raised by this appeal is whether we should change the common-law rule requiring proof of a dog owner's negligence as the sole basis for liability for personal injuries inflicted by the dog. In the face of longstanding precedent, both in Vermont and in the United States in general, we decline to change the substantive law by judicial decision. The decision of the trial court is affirmed.

¶ 2. On July 3, 2009, plaintiffs Michaela and David Martin and their three-year-old daughter Gracie spent the day at a campsite that the family rents on a seasonal basis at a campground in Island Pond, Vermont. Defendants John and Joanna Christman rented a campsite near the Martins. As long-term campers, the families were friendly with one another.

¶ 3. Michaela took Gracie to a playground adjacent to the Christmans' site. She watched Gracie from a nearby picnic table. The Christmans were camping with two of their boxer dogs, one of which was a two-year old male named Diesel. They had a table of their own which was sheltered with a gazebo. Joanna Christman tied Diesel to a pole supporting the gazebo. Gracie Martin asked John Christman if she could pet Diesel, and he said that she could.

¶ 4. Without warning Diesel attacked Gracie, knocking her to the ground and biting her face. John Christman forced his dog to let go of the child. The Martins took Gracie to North Country Hospital where she received surgery to repair her wounds.

¶ 5. The Martins brought suit against the Christmans, their insurer, and the campground on several theories, including strict liability and negligence. The trial court granted defendants' motion to dismiss the strict liability claim on the ground that existing Vermont precedent required proof of negligence to recover against

a dog owner for damages caused by his or her dog. It also dismissed a "direct action" claim against the Christmans' insurer. The parties stipulated to the dismissal with prejudice of the negligence claim and a related claim of premises liability. This appeal is limited to the trial court's dismissal of the strict liability claim.

¶ 6. We review the trial court's decision on a motion to dismiss de novo. *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.). We assume that all facts pleaded in the complaint are true. *Ass'n of Haystack Prop. Owners, Inc. v. Sprague*, 145 Vt. 443, 444, 494 A.2d 122, 123 (1985). A motion to dismiss for failure to state a claim upon which relief may be granted should be denied "unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Richards v. Town of Norwich*, 169 Vt. 44, 48, 726 A.2d 81, 85 (1999) (quotations omitted).

¶ 7. ■ Vermont law has long required proof of an owner's negligence to establish liability for injuries caused by dog bites. In *Godeau v. Blood*, 52 Vt. 251 (1880), this Court affirmed a verdict in favor of a boy bitten by a shopkeeper's bull terrier, described at trial as "the most wickedest kind of a dog." *Id.* at 254. Liability depended upon evidence that the dog was known to be "exceptionally fierce and ferocious" and had attacked other animals. *Id.* at 253. This Court did not require evidence of a prior attack upon a human. *Id.* at 254. Instead, we ruled that:

> [A]s [the owner] is held to be a man of common vigilance and care, if he had good reason to believe, from his knowledge of the ferocious nature and propensity of the dog, that there was ground to apprehend that he would, under some circumstances, bite a person, then the duty of restraint attached; and to omit it was negligence.

*Id.* Failure to tie the dog up despite knowledge of its vicious tendencies — in other words, the negligent actions of the owner — provided the basis for liability.

¶ 8. ■ We have followed the same line of analysis in subsequent decisions, which explicitly rule out tort recovery against dog owners based on theories of strict or absolute liability. See *Hillier v. Noble*, 142 Vt. 552, 556, 458 A.2d 1101, 1104 (1983); *Carr v. Case*, 135 Vt. 524, 525, 380 A.2d 91, 93 (1977); *Davis v. Bedell*, 123

Vt. 441, 442-43, 194 A.2d 67, 68 (1963); *Worthen v. Love*, 60 Vt. 285, 286, 14 A. 461, 461 (1888). The reasons offered in support of the rule are that dogs are useful and usually harmless, *Davis*, 123 Vt. at 442, 194 A.2d at 68, and that "[d]ogs have their rights" in the absence of evidence of a vicious nature. *Godeau*, 52 Vt. at 254.

¶ 9. In contrast to plaintiffs' suggestion in this case that the legal rule should derive primarily from the desire to compensate for the injury, the traditional common-law rule focuses on the conduct of the defendant. In *Hillier*, for example, Justice Peck asks what more the dog owner could have done to prevent injury to others: "What greater restraints could have been reasonably or prudently required is difficult to imagine. The law does not yet require that these common household pets be either caged or destroyed." 142 Vt. at 557, 458 A.2d at 1104.

¶ 10. ■ In limiting recovery to cases of negligence, the dog-bite cases fall within the normal parameters of our tort law. With the exception of ultra-hazardous activities such as blasting and keeping dangerous animals, there is no liability without a breach of a duty of care based on the defendant's conduct. Oliver Wendell Holmes, Jr. considered this issue in The Common Law, first published in 1881:

> [The law] does not adopt the coarse and impolitic principle that a man acts always at his peril. On the contrary, its concrete rules, as well as the general questions addressed to the jury, show that the defendant must have had at least a fair chance of avoiding the infliction of harm before he becomes answerable for such a consequence of his conduct.

O. Holmes, Jr., The Common Law 163 (Little, Brown & Co. 1946) (1881).

¶ 11. ■ The single greatest exception to liability founded upon negligence — strict liability for the sale of products — depends upon proof of product defect. Although strict product liability removes barriers of privity and scienter, it still requires evidence of design, manufacture, or warning — all matters of human agency — which are in some way deficient or unsafe. If we turn to the tort rules applicable to ordinary human behavior such as driving an automobile or maintaining a place of business, a demonstration of fault through a failure to act with sufficient care is a universal requirement for liability.

¶ 12. Like the majority of courts which have considered the issue before us, we see no reason to single out dog ownership for treatment that is different from that we apply to auto drivers, storekeepers, and other human pursuits. These are all activities which are usually safe and generally beneficial. An attack by a dog that came without warning is very similar to an auto accident caused by an unforeseen medical emergency. In neither case can we answer Justice Peck's question by pointing to a more reasonable, safer course of conduct for the defendant.

¶ 13. These principles are generally followed in the United States, except in those states that have enacted legislation departing from the common-law rules. See Annotation, *Modern Status of Rule of Absolute or Strict Liability for Dogbite*, 51 A.L.R.4th 446 (1987) (collecting cases). The Restatement (Third) of Torts limits strict liability for animal owners to those who keep unreasonably dangerous animals. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 23 (2010) ("An owner or possessor of an animal that the owner or possessor knows or has reason to know has dangerous tendencies abnormal for the animal's category is subject to strict liability for physical harm caused by the animal if the harm ensues from that dangerous tendency."). The comment to § 23 contrasts ownership of dangerous animals with pets and common farm animals in a manner entirely consistent with *Godeau* and the other Vermont dog bite cases:

> The premise of this Section is that, apart from animals that trespass and wild animals that pose an inherent risk of personal injury, most animals normally are safe, or at least are not abnormally unsafe in a way that would justify the imposition of strict liability. In addition, such animals provide important benefits to those who own or maintain possession of them. Thus, livestock such as cows, horses, and pigs are of substantial economic value, while pets such as dogs and cats provide essential companionship for households and families. Indeed, dogs and cats are frequently regarded as members of the family. Furthermore, ownership of animals such as dogs and cats is widespread throughout the public; therefore, the limited risks entailed by ordinary dogs and cats are to a considerable extent reciprocal. Accordingly, the case on behalf of strict liability for physical or emotional harms

that all such ordinary animals might cause is weak.

*Id.* cmt. b.

¶ 14. Plaintiffs argue that we should follow the eighteen or so states that have adopted strict liability for dog bites. However, the overwhelming majority have done so by statute. See, e.g., Ariz. Rev. Stat. § 11-1020 (2014); Cal. Civ. Code § 3342 (2014); Mass. Gen. Laws ch. 140, § 155 (2014); Wash. Rev. Code § 16.08.040 (2014). Only one state, South Carolina, has judicially eliminated the requirement of scienter for dog bites, and that decision has not been followed by other jurisdictions. *Hossenlopp v. Cannon,* 329 S.E.2d 438, 441 (S.C. 1985).* But see *Borns ex rel. Gannon v. Voss,* 2003 WY 74, ¶¶ 34-37, 70 P.3d 262 (declining to follow *Hossenlopp*); *Gehrts v. Batteen,* 2001 SD 10, ¶ 15, 620 N.W.2d 775 (declining to follow *Hossenlopp*).

¶ 15. ■ We similarly decline to follow such a course. "While this Court has and will 'change the common law to meet changing needs of the people of this state,' we also recognize instances where the issue presented 'is better left for legislative resolution.' " *Scheele v. Dustin,* 2010 VT 45, ¶ 15, 188 Vt. 36, 998 A.2d 697 (quoting *State v. LeBlanc,* 149 Vt. 141, 145, 540 A.2d 1037, 1040 (1987)) (declining to recognize new common-law cause of action for malicious injury to pet dog); see also *Goodby v. Vetpharm, Inc.,* 2009 VT 52, ¶ 11, 186 Vt. 63, 974 A.2d 1269

---

* In *Hossenlopp,* the South Carolina Supreme Court affirmed the trial court's summary judgment in favor of the plaintiff, a four-year-old child who was injured by the defendant's dog, holding that the record supported the lower court's finding that the defendant had prior knowledge that the dog tended to bite. *Hossenlopp,* 329 S.E.2d at 441. The court went on, however, to state that the dog-bite law was an "antiquated" rule of common law origin and therefore could be changed by common law mandate. *Id.* It held that dog owners know that dogs have a tendency to bite and therefore should be liable when their dogs injure others, regardless of whether the owner had previous knowledge of the dog's dangerous tendencies. *Id.* The court accordingly adopted as law a California jury instruction, itself based on a California statute, which provided for strict liability for injuries caused by dog bites except in cases where the dog was provoked. *Id.* Two of the five justices on the court concurred in the result but disagreed with the adoption of the California law. One justice stated that the cause at hand was "not the proper vehicle for such a far-reaching change in the law." *Id.* at 442 (Gregory, J., concurring and dissenting). The South Carolina legislature responded to *Hossenlopp* by enacting a statute imposing strict liability for dog bites the following year. *Harris v. Anderson Cnty. Sheriff's Office,* 673 S.E.2d 423, 425 (S.C. 2009).

(declining to extend recovery under Wrongful Death Act for loss of pet dog). As in *Scheele*, "we are not persuaded that plaintiffs' cause requires a major shift in the landscape of the common law." 2010 VT 45, ¶ 15. Even if such a change were warranted, it should be left to the Legislature, which is better positioned to develop and consider relevant factors such as the number of dogs and dog owners in Vermont, the number and nature of injuries caused by dogs in Vermont, or whether liability insurance is available to cover dog bites. See *Borns*, 2003 WY 74, ¶¶ 34-36 (noting that "there are many ways to fashion a dog bite law" and identifying factors relevant to decision whether to impose strict liability).

¶ 16. ■ We recognize the seriousness of the child's injury and her innocence of fault. We are not prepared, however, to depart from long-held principles of negligence to create a new field of strict liability. For these reasons, we affirm the decision of the trial court.

*Affirmed.*