VERMONT SUPERIOR COURT
Franklin Unit
17 Church Street
St. Albans VT 05478
802-524-7993
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-01152

Kianna Anderson, et al v. Franklin County Humane Society, Inc. Franklin County Animal Rescue, et al

## DECISION ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Kianna Anderson, age 9, was visiting the home of Defendant Michael and Nicole Canto when their recently adopted dog, Remi, attacked her. She brought this suit against the Cantos as well as the Franklin County Humane Society, Inc. ("FCHS"), from whom the Cantos had adopted Remi. Arguing that it owed Ms. Anderson no actionable duty, FCHS has moved for summary judgment. The court grants the motion in part and denies it in part.

The standards on a motion for summary judgment are familiar, and need not be repeated here. Instead, it suffices to observe that applying those standards and viewing all evidence in the light most favorable to Ms. Anderson, the following narrative emerges. On or about December 1, 2020, the Cantos adopted Remi from FCHS. Remi was a four-year-old mixed breed who had been surrendered to FCHS for re-housing three months earlier. At the time of Remi's surrender, his previous owners informed FCHS that he was aggressive with other dogs. While Remi had never shown aggression towards people, the previous owners were concerned about Remi's being near their young children, and requested that FCHS not place him in a home with children. Notwithstanding this request, FCHS placed Remi with the Cantos, who had at least one child. Three months later, Ms. Anderson, who was a friend of that child, slept over at the Cantos's residence. The next morning, Remi attacked her, causing serious injuries. This lawsuit followed.

Ms. Anderson asserts no fewer than ten counts against FCHS. The first seven of these, Counts 2–8, sound in negligence. Thus, the threshold question in each of these counts is whether FCHS owed Ms. Anderson any duty of care.

As a matter of first principles, Vermont law rejects strict liability for injuries caused by dogs. *See, e.g., Martin v. Christman*, 2014 VT 55, ¶¶ 14–16, 196 Vt. 536 (rejecting strict liability for dog bites). Thus, Count 11, which alleges liability under a theory of strict liability, fails as a matter of law. Instead, Vermont law provides that where a dog's owner "knows that the dog is dangerous, he or she

has a duty 'to exercise reasonable control and restraint' of the dog to avoid injury to others." *Gross v. Turner*, 2018 VT 80, ¶ 22, 208 Vt. 112 (quoting *Davis v. Bedell*, 123 Vt. 441, 443 (1963)). Similarly, our Supreme Court has recognized that "keepers" of dogs may be held liable for injuries caused by dogs with known dangerous propensities. *Id.* ¶ 23. The Court has yet to extend liability beyond these two categories.

Here, the undisputed facts make clear that nearly three months before the incident that gave rise to this suit, FCHS ceased to be either an owner or keeper of Remi. The latter conclusion requires no deep analysis. "[B]eing a keeper requires a person to exercise a similar degree of control and care for a dog as its owner." *Id.* Here, there is no evidence that once it adopted Remi out to the Cantos, FCHS undertook none of the typical responsibilities of dog ownership. Thus, it was not his keeper.

Ms. Anderson does not dispute this conclusion. Instead, she asserts that under the terms of the Adoption Contract signed by FCHS and the Cantos, FCHS retained ownership of Remi. That agreement provides:

> I hereby acknowledge receipt and understanding, therefore, agree to the following in regard to the animal I am adopting . . . . To be the primary caretaker of this animal . . . . To provide, at my own expense; adequate food, water, shelter, medical care, exercise, licensing and vaccinations in accordance with VT State Laws. . . . To care for my new pet in a humane and patient manner and notify [FCHS] immediately for guidance if my pet is showing issues of any kind. To do my due diligence to work through any issues, however, if it becomes necessary I will make an appointment to return him/her exclusively to [FCHS].

The agreement further reads, "I hereby accept possession of the animal at my own risk and hereby release and waive any rights against [FCHS], its staff, Board of directors and volunteers, from any damages to person or property caused by said animal . . . ."

Interpretation of this contract is a question of law. *See Cate v. City of Burlington*, 2013 VT 64, ¶ 15, 194 Vt. 265. It unambiguously transfers ownership of and responsibility for Remi to the Cantos, subject only to their promise to seek advice from FCHS if he showed "issues" and to return him exclusively to FCHS. By no stretch of the imagination did this agreement confer any degree of control or care upon FCHS. To the contrary, it transferred all care and control to the Cantos. In short, the Cantos became Remi's owner, to the exclusion of all others, including FCHS. This conclusion entitles FCHS to judgment as a matter of law on Count 2.

As noted above, our Court has yet to extend liability for injuries caused by dogs beyond the owner or keeper of the dog. The question nevertheless remains whether under basic negligence principles there is any basis for imposing liability on the facts of this case. FCHS, in its motion papers,

identified one provision of the Restatement (Second) of Torts, § 315, that elucidates circumstances in which one can owe an obligation to protect third parties. The court has identified another, § 324A. Only the latter applies to the circumstances of this case.

Pursuant to § 315,

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection . . . .

Here, whether one views Remi or the Cantos as the "third person," this provision does not help Ms. Anderson. Clearly, there was no special relationship between FCHS and either such as would impose a right, much less a duty, of control. Equally, there was no special relationship between FCHS and Ms. Anderson.

Turning next to § 324A, that section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*See Derosia v. Liberty Mut. Ins. Co.*, 155 Vt. 178 (1990) (formally adopting § 324A). The first step in § 324A analysis is to determine "whether a plaintiff has made a threshold showing that there existed an undertaking to render services for another for the protection of a third party." *Newton v. Preseau*, 2020 VT 50, ¶ 7, 212 Vt. 445 (internal quotations omitted). If the plaintiff satisfies this threshold inquiry, she must then establish one of the three alternate scenarios under § 324A(a)–(c). *Id.* ¶ 9. On the facts of this case, Ms. Anderson can satisfy these inquiries only with respect to her Counts 4–6.

Between the parties, they have found one case that bears remotely on the applicability of § 324A to the context of this case.[1] In *Murray v. Mason*, as here, a dog bite victim brought a negligence action against the nonprofit animal shelter that released the dog for adoption. 244 A.3d 187 (Del. Super. Ct. 2020) (modified Jan. 5, 2021) ("*Murray I*").[2] The plaintiff, as here, alleged "a litany of

---

[1] Ms. Anderson cited two cases on the "undertaking" question. The first, *Lloyd v. Frontera Produce, Ltd.*, 2014 WL 4825641 (D. Md. 2014), involved the sale of listeria-contaminated cantaloupe. The second, *PetSmart, Inc. v. Eighth Judicial Dist. Court*, 499 P.3d 1182 (Nev. 2021), determined that a pet store undertook no duty when it hosted an adoption event conducted by an independent charitable organization. Clearly, both of these cases are inapposite.

failures" by the shelter, including failing to warn the adopters of the dog's dangerous propensities and failing to train or otherwise rehabilitate the dog. *Id*. at 194. Ultimately, the court concluded that the plaintiff's allegations were "simply too attenuated to constitute a § 324A undertaking and are not viable as a matter of law" because "[t]he Restatement (Second) contemplates a § 324A undertaking as one that is tailored specifically toward, or, at the very least, has a logical connection to, the third party in question." *Murray II*, at *2 (Del. Super. Ct. June 30, 2021). The court rejected the idea that the animal shelter undertook a duty "on behalf of the public at large for an indefinite period of time" and determined, therefore, that the threshold inquiry failed. *Id*. The court nonetheless completed the analysis, finding that the plaintiff failed to state a viable claim under any of the three § 324A subsections. *See id*. at *3.

This court does not find the *Murray* court's analysis persuasive, at least as applied to the facts of this case. Arguably, FCHS undertook a duty to the Cantos to "make the best possible match" for their household. This would entail ensuring that the pet placed with the Cantos did not present an unreasonable risk to household members and foreseeable guests. In the exercise of due diligence in this regard, FCHS knew or should have known that the Cantos had a child. It was then surely foreseeable that that child might have guests. Thus, while Ms. Anderson was a complete stranger to the adoption, a jury could properly conclude that she was within a relatively discrete group of foreseeable third parties with a logical connection to FCHS's undertaking to make a safe and appropriate placement.

Of course, this does not end the inquiry. Having sufficient evidence to clear the initial threshold under § 324A, Ms. Anderson must still satisfy one of the three additional criteria. Here, while there can be no suggestion that FCHS undertook a duty owed by the Cantos to Ms. Anderson, *see* Restatement (Second) § 324A(b), a jury could properly conclude that FCHS's alleged negligence in placing Remi with the Cantos increased the risk to Ms. Anderson. *See* Restatement (Second) § 324A(a). In this regard, "[t]he standard of comparison . . . is not the risk of harm created if defendant [had] exercised reasonable care," but rather "the risk of harm that would be present if defendant never undertook to render the services." *Newton*, 2020 VT 50, ¶ 10 (quoting *Kuligoski v. Brattleboro Retreat*, 2016 VT 54A, ¶ 80, 203 Vt. 328, *superseded on other grounds by statute*, 18 V.S.A. § 1882(a), *as recognized in Lawson v. Halpern-Reiss*, 2019 VT 38, ¶ 17, 210 Vt. 224). *See also* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 43 cmt. d (" 'Increased risk' means that the undertaking creates greater risk than the risk that existed in the absence of the undertaking."). Thus, "a party must

---

[2] In *Murray I*, the court dismissed claims under Restatement §§ 315 and 323, but granted the plaintiff leave to amend the Complaint to assert a § 324A claim. In *Murray II*, the Court addressed that claim. *See Murray v. Mason*, No. CV N20C-01-254 MAA, 2021 WL 2742595 (Del. Super. Ct. June 30, 2021). Similarly, here, in their initial motion papers, the parties did not address § 324A; the court invited further briefing on the question.

prove facts showing that the alleged tortfeasor affirmatively either made, or caused to be made, a change in the conditions which change created or increased the risk of harm." *Newton*, 2020 VT 50, ¶ 10 (quoting *Murphy v. Sentry Ins.*, 2014 VT 25, ¶ 28, 196 Vt. 92 (internal quotations omitted)). Obviously, if FCHS had never undertaken to place Remi or any other pet with the Cantos, he would have presented no risk to Ms. Anderson or any other child in the Cantos' home. It was only when FCHS undertook to "make the best possible match" for the Cantos that the risk arose. Thus, Ms. Anderson has a viable claim under § 324A(a).[3]

Ms. Anderson also has a viable claim under § 324A(c). To succeed on such a claim, Ms. Anderson must show that she suffered damages as a result of either her own or the Cantos' reliance on FCHS's undertaking. Ms. Anderson has not alleged that she relied on FCHS's alleged undertaking to the Cantos; nor could she, because there is no evidence that she knew of that undertaking. Clearly, however, there is sufficient evidence to allow a jury to find that the Cantos did rely on FCHS to, in FCHS's own words, "make the best possible match." And there certainly is sufficient evidence to allow a jury to conclude that the Cantos' reliance in this regard was a proximate cause of Ms. Anderson's injuries. Thus, both (a) and (c) of § 324A afford viable paths to recovery.

Section 324A, however, supports only claims arising out of FCHS's undertaking to the Cantos. Counts 4-6 of Ms. Anderson's complaint, while unnecessarily redundant, arise out of those undertakings. Count 3, however, does not; due diligence in FCHS's undertaking to "make the best possible match" could not require it to destroy Remi. Similarly, Count 7 does not arise out of any actionable undertaking; the court cannot find any legal support for the notion that FCHS's policies and procedures were any part of an undertaking to the Cantos or a duty to Ms. Anderson. Equally, Count 8 cannot survive, as there is no suggestion that FCHS made any representations to Ms. Anderson, nor that she was an intended third-party beneficiary of any representations made to the Cantos. Similarly, the notion that Ms. Anderson was a "consumer" of FCHS is so entirely devoid of support in law and language to suggest that her attorney tested the limits of Rule 11 in pleading Count 9. Finally, the "implied warranty of suitability" is a concept unknown to Vermont law—or, as far as the court can determine, any other jurisdiction—outside the realm of commercial leases. In her Opposition, Ms. Anderson shifts ground, relying on implied warranties of merchantability and fitness for a particular

---

[3] There is one aspect of Ms. Anderson's § 324A(a) claim that warrants further comment. Ms. Anderson makes a meal of FCHS's alleged negligence in caring for Remi during the time before the Cantos adopted him. This is a red herring. First, there is insufficient evidence to establish the breach of care in this regard, much less that FCHS breached it. More importantly, any such negligence was unrelated to the undertaking "to render services to another which he should recognize as necessary for the protection of a third person"—here, the alleged undertaking to properly vet animals for placement. In caring for Remi pre-placement, FCHS undertook no duty to the Cantos or anyone else, much less a duty necessary for the protection of a third person.

purpose. Her attempts to blend these into an amorphous "warranty of suitability" fail. More importantly, there is no evidence that the transaction here was a "sale," so as to bring it within the ambit of the Uniform Commercial Code. Finally, FCHS's adoption contract clearly disclaims any warranties. Thus, Count 10 cannot survive.

## ORDER

The court grants FCHS's motion in part and denies it in part. FCHS is entitled to judgment as a matter of law on Counts 2, 3, and 7–11. Counts 4–6 survive. The clerk will schedule a status conference.

Electronically signed pursuant to V.R.E.F. 9(d): 11/8/2023 2:39 PM

_____

Samuel Hoar, Jr.
Superior Court Judge