NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 80

No. 2018-018

| | |
|---|---|
| Eric Gross and Adrianne Gross | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| | |
| Elizabeth Turner and Antonio Flores | May Term, 2018 |

Samuel Hoar, Jr., J.

Thomas C. Bixby of Law Offices of Thomas C. Bixby, LLC, Rutland, for Plaintiffs-Appellants.

Daniel L. Burchard of McCormick, Fitzpatrick, Kasper & Burchard, P.C., Burlington, for Defendant-Appellee Turner.

Bruce Palmer of Downs Rachlin Martin PLLC, St. Johnsbury, for Defendant-Appellee Flores.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **REIBER, C.J.** In this negligence action, we consider whether a landlord and a social guest of a tenant may be held liable for injuries caused by the tenant's dogs to a third person outside of the landlord's property. We conclude that plaintiffs failed to establish that either defendant owed a duty of care to the injured plaintiff in this case, and therefore affirm.

¶ 2. The following facts were undisputed for purposes of summary judgment. On January 15, 2016, Antonio Flores, his wife, and their two young children arrived at the residence of William and Charity Pearo in Fair Haven. The Pearos had invited the Floreses for dinner. The Pearos were not yet home but had told the Floreses that the door would be open so they could wait

inside. Based on previous visits, Antonio Flores assumed the Pearos' three dogs would be near the front door, so the family decided to go in through the side door. The Floreses' son opened the side door. Without warning, the Pearos' three dogs ran out of the house. Mr. Flores called to the dogs to try to get them back inside.

¶ 3.    At that moment, plaintiff Eric Gross was walking his dog down the sidewalk near the Pearos' home. The Pearos' three dogs ran over and attacked his dog. One of the dogs grabbed plaintiff's hand, which was covered by a glove, and pulled on his arm, dislocating his shoulder.

¶ 4.    The Pearos leased their residence in October 2015 from defendant Elizabeth Turner, who lives in New York. When Turner rented the property to the Pearos, she was aware they had three pet dogs and permitted them to keep the dogs at the property. She was not aware of any prior incidents involving the dogs at the time the lease was signed. She had known the Pearos and their dogs for several years and had not observed any of the dogs to have aggressive tendencies. For this reason, she did not make any inquiries about the dogs or their temperament before renting to the Pearos.

¶ 5.    Antonio Flores testified in a deposition that he had allowed the Pearos' dogs to be around his six- and seven-year-old children and they had never posed a threat to the children. He said that he would not have brought his children to the house or allowed them to go near the door if he felt the dogs were vicious. He described Buck, the largest dog, as "hyper," with high energy, but not aggressive. Jedi, the oldest and smallest dog, growled on occasion if someone got too close to her, but never bit at anyone. The third dog, Harley, was very intelligent and laid back.

¶ 6.    In January 2017, Eric Gross and his wife Adrian filed a complaint alleging negligence against Elizabeth Turner and Antonio Flores.[1]  Flores, in turn, filed a third-party

---

[1]  Plaintiffs state in their brief that they settled with the Pearos for an unspecified amount prior to filing suit against defendants.

2

complaint against the Pearos seeking indemnification for any judgment in favor of plaintiffs. The Pearos failed to respond, and default judgment was entered in favor of Flores.

¶ 7. After the parties conducted discovery, each defendant moved for summary judgment. In December 2017, the court granted summary judgment to defendants in separate orders. The court determined that plaintiffs had failed to establish that either defendant owed a duty to plaintiffs to control or restrain the Pearos' dogs. The court dismissed the third-party complaint against the Pearos as moot. Plaintiffs filed a motion to reconsider, which the court denied in January 2018. This appeal followed.

¶ 8. We review a decision granting summary judgment de novo, using the same standard as the trial court: summary judgment is appropriate if the moving party shows that the material facts are not genuinely disputed and that he or she is entitled to judgment as a matter of law. White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999); V.R.C.P. 56(a). In determining whether a genuine dispute of material fact exists, the nonmoving party "is entitled to the benefit of all reasonable doubts and inferences." Carr v. Peerless Ins. Co., 168 Vt. 465, 476, 724 A.2d 454, 461 (1998). Once a claim is challenged by a properly supported motion for summary judgment, the nonmoving party may not rest upon the allegations in the pleadings, but must come forward with admissible evidence to raise a dispute regarding the facts. Alpstetten Ass'n v. Kelly, 137 Vt. 508, 514, 408 A.2d 644, 647 (1979); V.R.C.P. 56(c) (requiring factual assertions at summary judgment stage to be supported by admissible evidence).

¶ 9. To prevail on their negligence claims, plaintiffs had to prove that each defendant breached a duty of care owed to plaintiffs, thereby causing them harm. O'Connell v. Killington, Ltd., 164 Vt. 73, 76, 665 A.2d 39, 42 (1995). The only issue in this appeal is whether defendants owed a legal duty to plaintiffs. The existence of a duty "is primarily a question of law" for the court to decide. Langle v. Kurkul, 146 Vt. 513, 519, 510 A.2d 1301, 1305 (1986).

## I.  Liability of Landlord

¶ 10.    We first consider whether the Pearos' landlord, Elizabeth Turner, owed a duty to protect third persons outside of the leased premises from harm caused by the Pearos' dogs. Plaintiffs argue that Turner is legally responsible for the injuries suffered by Eric Gross because she permitted the Pearos to keep aggressive dogs on her property without inquiring into the history of the dogs or causing a fence to be erected prior to the tenancy.[2]

¶ 11.    Plaintiffs' argument is based on the Restatement (Second) of Torts § 379A, which provides:

> A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,
>
> (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and
>
> (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.

Restatement (Second) of Torts § 379A (1965).  "In other words, if a landowner leases property to another knowing that the tenant is going to carry on an activity that involves an unreasonable risk, and the landowner consents to that conduct, then the landlord has a duty to third parties to exercise reasonable care."  Deveneau v. Wielt, 2016 VT 21, ¶ 23, 201 Vt. 396, 144 A.3d 324 (Robinson, J., dissenting).

---

[2]  According to plaintiffs, the Town of Fair Haven ordered Turner to construct a fence around the property after the incident that is the subject of this case.  Plaintiffs suggest that this fact could be used to demonstrate Turner's knowledge of the dogs' dangerous propensities.  They are incorrect.  Under Vermont Rule of Evidence 407, evidence of subsequent remedial measures is not admissible to prove negligence.  Moreover, the fact that the Town ordered Turner to build a fence after the incident does not tend to prove that she knew the dogs were dangerous before the incident.

¶ 12. Dog ownership is a common activity that is "usually safe and generally beneficial." Martin v. Christman, 2014 VT 55, ¶ 12, 196 Vt. 536, 99 A.3d 1008. Under Vermont law, ordinary domestic dogs are not considered to be an unreasonable risk to the public. See id. ¶ 13 ("[A]part from animals that trespass and wild animals that pose an inherent risk of personal injury, most animals normally are safe, or at least are not abnormally unsafe in a way that would justify the imposition of strict liability." (quotation omitted)). For this reason, we reject plaintiffs' broader argument that a landlord assumes a duty to protect all persons outside the property from physical harm by simply permitting a tenant to keep a domestic dog on unfenced premises, even if there is a risk that the dog might travel beyond the property line.

¶ 13. We agree, however, that under § 379A a landlord owes a duty to take reasonable steps to protect persons outside the land from injuries caused by a tenant's dog if the landlord knew or had reason to know at the time of entering the lease that the dog in question posed an unreasonable risk of harm to such persons. Restatement (Second) of Torts § 379A. The duty arises from the fact that the landlord has some control over the activities of the tenant, in that the landlord decides whether to rent to the tenant in the first place, renew or terminate the tenancy, or to impose conditions in the lease. See Park v. Hoffard, 847 P.2d 852, 855 (Or. 1993) (explaining that landlord-tenant relationship "has implications for a landlord's tort liability to persons injured off the rental property by some action or inaction of the tenant to the extent that a landlord has control over the tenant"). By permitting a tenant to keep a dog that the landlord knows to be vicious, the landlord could be viewed as having created the risk that led to the third person's injuries. See Strunk v. Zoltanski, 468 N.E.2d 13, 15 (N.Y. 1984) (explaining that by knowingly leasing premises to owner of vicious dog, landlord could be found to have created risk that injured plaintiff). Requiring the landlord to exercise due care to protect the public in such a situation is consistent with the general duty of care owed to the public by a landowner who personally carries on unreasonably dangerous activities on his or her land. See Restatement (Second) of Torts § 371

5

(stating that possessor of land may be held liable for physical harm to others outside of land caused by unreasonably dangerous activities of possessor).

¶ 14.    Many jurisdictions have applied § 379A in negligence actions against landlords for injuries to third parties caused by vicious dogs owned by tenants.  As in this case, these decisions frequently turn on whether the landlord knew of the tenant's dog and its dangerous tendencies.  See, e.g., Uccello v. Laudenslayer, 118 Cal. Rptr. 741, 748 (Ct. App. 1975) (reversing judgment in favor of landlord where jury could infer from evidence presented that landlord knew of dog's vicious propensities); Strunk, 468 N.E.2d at 16 (affirming denial of landlord's motion for summary judgment where parties disputed whether, "at the time of the initial leasing of the premises to the tenant, the landlord knew both of the prospective presence of the dog and of its vicious propensities"); Park, 847 P.2d at 854-55 (reversing summary judgment on similar grounds). Where the plaintiff offers no evidence that the landlord knew the tenant's dog was dangerous, the landlord is not liable for the plaintiff's injures.  Stokes v. Lyddy, 815 A.2d 263, 273 (Conn. App. Ct. 2003) (affirming judgment in favor of landlord in negligence action where undisputed evidence showed that landlord was unaware of tenant's dog or its vicious propensities).[3]

¶ 15.    Thus, to survive summary judgment on their negligence claim against Turner under the above rule, plaintiffs had to present admissible evidence from which a jury could conclude that at the time of entering the lease, Turner knew or had reason to know the Pearos' dogs posed an

---

[3]  Some courts have gone so far as to hold that a landlord owes no duty whatsoever to a person injured by a tenant's dog outside the landlord's property, regardless of whether the landlord knew the dog was dangerous, because the landlord did not control the area where the injury occurred.  See Solorio v. Rodriguez, 2013 IL App (1st) 121282, ¶ 23, 987 N.E.2d 452 (holding landlord owes no duty to third person for injuries caused by tenant's dog on neighboring land if landlord does not retain control of area); see also Fernandez v. Marks, 642 P.2d 542, 544 (Haw. Ct. App. 1982) (same); Feister v. Bosack, 497 N.W.2d 522, 523 (Mich. Ct. App. 1993) (same); Kimbrough v. Keenum, 2009–CA–02039–COA, 68 So. 3d 738, 741 (Miss. Ct. App. 2011) (same). None of these decisions discuss the Restatement rule, however, and we do not find them to be persuasive.

unreasonable risk to persons outside the land. Plaintiffs did not meet this burden. They did not show that Turner knew of any prior aggressive behavior by the dogs. Nor did they demonstrate that she was aware of facts that would lead a reasonable person to believe that the dogs were vicious. To the contrary, the undisputed facts showed that Turner had known the Pearos' dogs for several years, had never personally observed them to exhibit any aggressive tendencies, and did not know whether they had been involved in any previous incidents. In the absence of any evidence that Turner knew or had reason to know of the dogs' vicious propensities at the time she entered into the lease with the Pearos, she owed no duty to plaintiffs under § 379A.

¶ 16. Plaintiffs argue, however, that the dogs were pit bulls and that Turner therefore owed a duty to investigate their history and propensities before allowing them on the premises. Accordingly, it is their assertion that if Turner had contacted the police in the town where the Pearos previously resided, she would have learned of prior aggressive behavior by the dogs. This argument falls short for several reasons.

¶ 17. First, this Court has never held that a dog's breed alone is sufficient to put its owners or others on notice that it poses an unreasonable risk of harm, or that pit bulls or other breeds are dangerous per se. In Vermont, liability in dog-bite cases has always depended on the propensities of the individual animal. See, e.g., Martin, 2014 VT 55, ¶ 8; Hillier v. Noble, 142 Vt. 552, 556-57, 458 A.2d 1101, 1104 (1983); Carr v. Case, 135 Vt. 524, 525, 380 A.2d 91, 93 (1977); Godeau v. Blood, 52 Vt. 251, 254 (1880). Even if we were to consider departing from this longstanding precedent, plaintiffs' sweeping claim that pit bulls are an inherently dangerous breed lacks any evidentiary support whatsoever. They therefore have failed to establish the underlying premise for their argument that Turner owed a duty based solely on the dogs' breed.[4]

_____

[4] In addition to the lack of evidence that pit bulls are a dangerous breed, there is also no evidence in the summary judgment record that Turner knew or believed the dogs were pit bulls. When asked if the dogs were pit bulls, Turner stated, "I don't know. They're mutts." She testified at her deposition that her sister had a pit bull and that the Pearos' dogs did not look like pit bulls

¶ 18. Moreover, the Restatement itself makes clear that landlords are not obligated to conduct background checks on tenants' pets. Liability under § 379A turns on whether a landlord "knew or had reason to know" at the time of the lease that the particular animal in question is abnormally dangerous. A separate section of the Restatement explains that the phrase "reason to know" does not imply a duty to investigate:

> Both the expression "reason to know" and "should know" are used with respect to existent facts. These two phrases, however, differ in that "reason to know" implies no duty of knowledge on the part of the actor whereas "should know" implies that the actor owes another the duty of ascertaining the fact in question. "Reason to know" means that the actor has knowledge of facts from which a reasonable [person] of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his [or her] conduct would be predicated upon the assumption that the fact did exist. "Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty.

Restatement (Second) of Torts § 12, cmt. a. The use of "reason to know" in § 379A means that the plaintiff must show that the landlord had actual knowledge of facts that would alert a reasonable person to the dog's vicious propensities.[5] It does not create an obligation on the part of the landlord to actively inquire into the dog's history before permitting it to reside on the premises. See Knapton ex rel. E.K. v. Monk, 347 P.3d 1257, 1262 (Mont. 2015) (explaining that § 379A did not

---

to her. As the factual premise upon which plaintiffs' argument rests, the evidence is simply not there. See Charles v. Mitchell, 118 A.3d 149, 152 n.4 (Conn. App. Ct. 2015) (affirming summary judgment in favor of landlord; even assuming pit bulls were known for "ill-tempered and ferocious tendencies," plaintiff presented no evidence that landlord knew dog was pit bull).

[5] To accept plaintiffs' argument that Turner had a duty to investigate would be to impose a form of strict liability on landlords who rent to pit bull owners. We have consistently declined to adopt strict liability for dog owners, reasoning that such a change in the law is better left to the Legislature. Martin, 2014 VT 55, ¶ 15; Hillier, 142 Vt. at 556, 458 A.2d at 1104; Godeau, 52 Vt. at 254. For the same reason, we reject plaintiffs' invitation to hold landlords who rent to owners of pit bulls, or any other breeds, to a higher standard of care than the owners themselves.

impose a duty on landlord to investigate potential danger posed by tenant's pit bulls; rather, issue was whether landlord had knowledge of facts from which she could infer that dogs were vicious); see also Uccello, 118 Cal. Rptr. at 748 (holding that landlord has no duty of care to third persons harmed by tenant's dog on premises unless landlord has "actual knowledge" of dog's dangerous propensities).[6]

¶ 19.    Plaintiffs also argue Turner is liable for negligently permitting her tenants to create a public nuisance on her land.[7]  Section 837 of the Restatement (Second) of Torts, which is closely related to § 379A, states that a landlord may be held liable for a nuisance caused by an activity carried out by a tenant if at the time of the lease the landlord consents to the activity or knows it will be carried on, and "knows or should know that it will necessarily involve or is already causing the nuisance."  Restatement (Second) of Torts § 837 (1979); id. § 379A cmt. a (explaining that § 379A and § 837 are related and should be read together).  Like plaintiffs' claim under § 379A, this claim fails because plaintiffs have not shown that Turner knew or should have known at the

---

[6]  None of the other cases cited by plaintiffs support their argument that a landlord who permits a tenant to keep dogs in a rental property is obliged to investigate whether the dogs have exhibited aggressive behavior in the past.  Instead, these cases hold—consistent with the Restatement—that a landlord may be held liable for injuries caused by a tenant's dog if the landlord had actual knowledge of the dog's vicious propensities.  See Donchin v. Guerrero, 41 Cal. Rptr. 2d 192, 196 (Ct. App. 1995) ("Under California law, a landlord who does not have actual knowledge of a tenant's dog's vicious nature cannot be held liable when the dog attacks a third person."); Matthews v. Amberwood Assocs. Ltd., 719 A.2d 119, 129 (Md. 1998) (holding landlord could be held liable for injuries suffered by guest who was attacked by tenant's dog on premises where landlord was aware of dog's vicious propensities); Wright v. Schum, 781 P.2d 1142, 1146 (Nev. 1989) (holding that landlord who knew of danger posed by tenant's pit bull and promised neighbor to keep dog from escaping but failed to do so could be held liable for injuries caused to third person when dog escaped from premises); Cronin v. Chrosniak, 145 A.D.2d 905, 905-06 (N.Y. App. Div. 1988) (explaining that landlord's liability for injuries inflicted by tenant's animal depends on landlord's knowledge "that his tenant is harboring an animal with vicious propensities").

[7]  Although not specifically identified as such, plaintiffs' claim could only be for public nuisance, as they do not allege that the dogs caused a nontrespassory invasion of their private use and enjoyment of land.  See Restatement (Second) of Torts § 821D (1979) (defining private nuisance).

time of the lease that the Pearos' dogs would necessarily cause an unreasonable interference with public health, safety, or peace. See Restatement (Second) of Torts § 821B (1979) (defining public nuisance). Because dogs are ordinarily considered to be safe and beneficial, the mere keeping of a dog by a tenant is not sufficient to give rise to nuisance liability on the part of the landlord. There must be some basis for the landlord to know that the particular dog or dogs will necessarily interfere with a public right. See Stokes, 815 A.2d at 272 (explaining that as with § 379A, liability under § 837 "hinges on the landowner's knowledge, at the inception of the lease, regarding the existence of a dangerous activity"); Restatement (Second) of Torts § 837, Reporter's Note (b) (explaining that "[i]f the activities consented to would not necessarily result in a nuisance and the nuisance results only from the manner in which they are carried on by the lessee, the lessor is not liable," and collecting cases). There was no such evidence in this case.

¶ 20. Plaintiffs failed to make the showing that Turner knew or had reason to know that the Pearos' dogs were unreasonably dangerous as required to hold her liable under § 379A. They likewise failed to establish a claim under § 837 because they have not demonstrated that Turner knew or should have known that the dogs posed an unreasonable risk to public safety.[8] We therefore affirm the trial court's decision granting summary judgment in favor of Turner.

II. Liability of Guest

¶ 21. We next consider whether Antonio Flores, the Pearos' guest, may be held liable for the injuries caused by the Pearos' dogs. Plaintiffs argue that Flores was acting as the dogs' caretaker and therefore owed the same duty as their owners to control the animals.

¶ 22. Under Vermont common law, a dog's owner "is not liable for injuries to persons and property unless the owner had some reason to know the animal was a probable source of

---

[8] For this reason, plaintiffs' arguments regarding the evidence of other alleged incidents they submitted with their motion to reconsider are not helpful to their claims because no evidence shows that Turner knew of these incidents. They are therefore not material to plaintiffs' negligence claim against her.

10

danger." Davis v. Bedell, 123 Vt. 441, 442-43, 194 A.2d 67, 68 (1963). Where the owner knows that the dog is dangerous, he or she has a duty "to exercise reasonable control and restraint" of the dog to avoid injury to others. Id. at 443.

¶ 23. We have recognized that in addition to owners, "keepers" of dogs may be held liable under the above rule. See Crowley v. Groonell, 73 Vt. 45, 47 50 A. 546, 546-47 (1901) ("The owner or keeper [of a dog], having knowledge of its disposition to commit such injuries must restrain it at his peril . . . ."). The term keeper is not clearly defined anywhere in our caselaw. However, we have held that where a dog was owned by the defendant's minor son, but the defendant "housed, harbored and fed the dog in the way such animals are usually kept by owners, and permitted him to be a member of his family, in so far as such domestic animals can be members of families, he may well be regarded as the keeper of the dog." Plummer v. Ricker, 71 Vt. 114, 116, 41 A. 1045, 1045 (1898). This suggests that being a keeper requires a person to exercise a similar degree of control and care for a dog as its owner. Other courts have interpreted the term similarly. See Brown v. Bolduc, 556 N.E.2d 1051, 1052-53 (Mass. App. Ct. 1990) ("It is difficult, of course, to frame a universal definition of keepership, but a harboring with an assumption of custody, management and control of the dog seems intrinsic to it." (quotation omitted)); Verrett v. Silver, 244 N.W.2d 147, 149 (Minn. 1976) ("One becomes the keeper of a dog only when he either with or without the owner's permission undertakes to manage, control or care for it as dog owners in general are accustomed to do."); Zwinge v. Love, 325 N.Y.S.2d 107, 109 (App. Div. 1971) (holding that mere acts by visitor of calling dog, giving it commands, or letting it in and out of house "would not be enough to constitute her as its harborer or keeper").

¶ 24. According to plaintiffs, Flores voluntarily assumed the role of the dogs' keeper because he testified that he would have let the dogs out if they needed to relieve themselves and would have given them water if necessary. They argue that Flores therefore owed a duty to restrain

11

the dogs and breached this duty by permitting his minor son to open the door of the house without first ascertaining where the dogs were.

¶ 25. Assuming for the purpose of summary judgment that the above facts were sufficient for the jury to find Flores was acting as the dogs' keeper, plaintiffs' negligence claim against him still fails, for the same reason as their claim against Turner: they have not shown that Flores knew that the dogs posed a threat to anyone. See Davis, 123 Vt. at 442-43, 194 A.2d at 68 (stating rule that liability for injuries does not attach unless owner or keeper knew or had reason to know animal was likely dangerous). There is no evidence that Flores knew of any prior incidents involving the dogs or that they were likely to attack other dogs or humans.[9] He described one of the dogs as "hyper" and said that another occasionally growled if someone got too close to her but never bit at anyone. He also stated that he allowed his six- and seven-year-old children to play with the dogs and had never feared for their safety. No reasonable jury could conclude from this evidence that Flores knew the dogs posed an abnormal danger to the public.

¶ 26. Plaintiffs argue that it is genuinely disputed whether Flores knew that the dogs were likely to be aggressive because the dogs were pit bulls and pit bulls are generally known to be dangerous. We reiterate that this Court has never adopted a breed-wide dangerousness standard for dogs, and there is no evidence in this case to support such a departure from longstanding caselaw. See supra, ¶ 17. The relevant issue here is whether Flores knew or had reason to know that these particular animals were dangerous. Even if Flores qualified as the dogs' keeper, plaintiffs have failed to demonstrate that he had such knowledge, as required to support their negligence claim. [10] Id.

_____

[9] As we explained in footnote 8, supra, the evidence of alleged prior incidents involving the Pearos' dogs does not create a material dispute of fact where there was no indication that Flores knew about these incidents.

[10] As with Turner, there is no evidence in the record that Flores knew or had reason to know that these dogs were pit bulls.

¶ 27. In the alternative, plaintiffs argue that Flores owed a duty to Eric Gross because he voluntarily undertook to restrain the dogs after they ran out of the house. They rely upon the Restatement sections providing that one who negligently performs a voluntarily assumed undertaking to render services to another is subject to liability for physical harm resulting to the intended recipient of the services or a foreseeable third person. See Restatement (Second) of Torts §§ 323, 324A; Langlois v. Town of Proctor, 2014 VT 130, ¶ 10, 198 Vt. 137, 113 A.3d 44 (noting that Vermont has recognized and chosen to follow §§ 323 and 324A).

¶ 28. Plaintiffs' claim is based on Eric Gross's testimony that he heard an unidentified person say "come, get back, get them in the backyard," and waited with his dog until the Pearos' dogs were out of view. He waited for about twenty or thirty seconds, and "[e]ventually the dogs were gone. I thought they had a fence. So we continued walking." The Pearos' dogs then ran over and attacked his dog. From this testimony, plaintiffs infer that after letting the dogs out of the house, Flores "corralled" the dogs in the Pearos' backyard, but then negligently let them escape his control.

¶ 29. This is not a reasonable inference to draw from the record. See Carr, 168 Vt. at 476, 724 A.2d at 461 (explaining nonmoving party entitled to benefit of reasonable doubts and inferences). There is no evidence of what happened during the twenty or thirty seconds when the dogs were out of plaintiff's view, and there is no evidence that Flores had the dogs under effective control at any point between when they exited the house and attacked plaintiffs' dog or that he behaved negligently in any way. The record is simply insufficient for a jury to find that Flores undertook to control the dogs after they exited the house. See Rubin v. Town of Poultney, 168 Vt. 624, 626, 721 A.2d 504, 506 (1998) (mem.) (holding town officers' warnings to dog owners to confine their dog was insufficient basis to prove that officers voluntarily assumed owners' duty to control the dog).

13

¶ 30.    Assuming without deciding that a "negligent undertaking" theory could apply in this context, plaintiffs have failed to present evidence from which a reasonable jury could conclude that defendant Flores knew or had reason to know that the dogs were a probable source of danger, such that he owed a duty to third persons to restrain them.  Nor have they demonstrated that he voluntarily undertook to restrain the dogs.  Accordingly, we see no reason to disturb the trial court's award of summary judgment to Flores.

Affirmed.

FOR THE COURT:

_____
Chief Justice

14