STATE OF VERMONT

SUPERIOR COURT
Washington Unit

CIVIL DIVISION
Docket No. 616-11-19 Wncv

2020 OCT -7 A 11: 27

## Higgins vs. Bagalio et al

# ENTRY REGARDING MOTION

FILED

Count 1, Personal Injury - Dog Bite (616-11-19 Wncv)
Count 2, Personal Injury - Dog Bite (616-11-19 Wncv)
Count 3, Personal Injury - Dog Bite (616-11-19 Wncv)

| | |
|---|---|
| Title: | Motion for Summary Judgment (Motion 1) |
| Filer: | Shawn Bailey |
| Attorney: | John E. Brady |
| Filed Date: | July 20, 2020 |

Response filed on 09/14/2020 by Attorney Steven A. Adler for Plaintiff Katherine Higgins
Response filed on 09/18/2020 by Attorney John E. Brady for Defendant Suzan Bailey
Response filed on 09/25/2020 by Attorney Steven A. Adler for Plaintiff Katherine Higgins

**The motion is GRANTED.**
**The motion is GRANTED.**

In this dog bite case, Plaintiff, Katherine Higgins, has sued the landlord of the dog owner asserting a duty by the landlord to have made sufficient inquiry to disqualify the dog owner from renting the residence.

Plaintiff Katherine Higgins alleges that her neighbor, Mr. Skyler Bagalio, invited her into his home, she entered, and shortly thereafter Baxter, Mr. Bagalio's pit bull, attacked her without provocation causing serious injuries. Mr. Bagalio rented his single-family home from Defendants Shawn and Suzan Bailey. In this case, Ms. Higgins claims that the Baileys, as Mr. Bagalio's landlords, are liable for the injuries caused by Baxter.[1] The Baileys have filed a summary judgment motion, arguing that they have no liability for Ms. Higgins' injuries because they did not know at the inception of the lease agreement with Mr. Bagalio (or at any time prior to the attack) that Baxter had any dangerous propensity to attack people. Ms. Higgins opposes summary judgment, arguing that the Baileys are liable for failing to proactively investigate Baxter's dangerousness before letting him move in and, in any event, there is a triable issue as to whether the circumstances were such that they should have known that Baxter was dangerous.

Ms. Higgins' principal argument in this case is that a residential landlord has a proactive duty to investigate whether a dog moving into a leased residence is dangerous, regardless of basis to suspect that the dog may be dangerous, and if so the landlord must either not permit

---

[1] Initially, Mr. Bagalio was a defendant in this case. He has since been dismissed at Ms. Higgins' request. He had Baxter euthanized shortly after the attack.

the dog to move in or to take steps to protect third parties. She argues that tort duties in Vermont are a factual issue rather than a legal one, and her landlord-expert has opined that a reasonable Vermont landlord, no matter the circumstances, always should investigate dangerousness before permitting dogs to move into leased premises. She thus argues that the applicable duty in this case is a dispute of fact that should be resolved by the jury at trial.

Ms. Higgins' argument that, in Vermont, the existence of a legal duty is a matter of fact is wrong, and that issue is not fairly debatable. "Existence of a duty is primarily a legal question." *Sutton v. Vermont Regl. Ctr.*, 2019 VT 71A, ¶ 26, 2020 WL 4380709; *Deveneau v. Wielt*, 2016 VT 21, ¶ 8, 201 Vt. 396; *Buxton v. Springfield Lodge No. 679, Loyal Or. of Moose, Inc.*, 2014 VT 52, ¶ 7, 196 Vt. 486; *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 7, 198 Vt. 137. "Whether or not one party owes a duty to another is an expression of policy considerations about when people are entitled to legal protection. Thus, whether a duty is owed is primarily a legal question in which the Legislature or courts 'apply general categorical rules' establishing or withholding liability." *LeClair v. LeClair*, 2017 VT 34, ¶ 10, 204 Vt. 422 (citation omitted) (quoting Restatement (Third) of Torts § 7 cmt. a and citing *Kuligoski v. Brattleboro Retreat*, 2016 VT 54A, ¶ 19, 203 Vt. 328 (superseded by statute on other grounds)).

A recent Vermont Supreme Court case resolves the issues in this one: in that case the duty applicable here was exhaustively discussed in *Gross v. Turner*, 2018 VT 80, 208 Vt. 112. In *Gross*, a pedestrian was walking by a leased residence. Social guests of the tenants accidentally let the tenants' dogs out of the house. They charged at the pedestrian and injured him. The pedestrian sued both the social guests and the landlord. As in this case, the injured party was a "third person outside the landlord's property." *Id.* ¶ 1. It was clear in *Gross* that the landlord had no knowledge that the dogs were dangerous. The principal issue was whether the landlord had any duty to "investigate" whether the dogs were dangerous, as the pedestrian alleged that if the landlord had investigated, the dogs' dangerousness would have been revealed.

The Court described the landlord's duty generally as follows: "a landlord owes a duty to take reasonable steps to protect persons outside the land from injuries caused by a tenant's dog if the landlord knew or had reason to know at the time of entering the lease that the dog in question posed an unreasonable risk of harm to such persons." *Id.* ¶ 13. The knew-or-should-have-known standard "does not create an obligation on the part of the landlord to actively inquire into the dog's history before permitting it to reside on the premises." *Id.* ¶ 18. "To know" means to actually know, and having "reason to know" means "actual knowledge of facts that would alert a reasonable person to the dog's vicious propensities." *Id.* Beyond that, there simply is no duty to inquire or investigate. This is so on a dog-by-dog basis. The mere fact that the dog is a member of a suspected "dangerous breed" is insufficient. See *id.* ¶ 17 ("[T]his Court has never held that a dog's breed alone is sufficient to put its owners or others on notice that it poses an unreasonable risk of harm, or that pit bulls or other breeds are dangerous per se. In Vermont, liability in dog-bite cases has always depended on the propensities of the individual animal."). "Where the plaintiff offers no evidence that the landlord knew the tenant's dog was dangerous, the landlord is not liable for the plaintiff's injures." *Id.* ¶ 14.

Ms. Higgins disregards the *Gross* decision as irrelevant to this case because, in *Gross*, the landlord was well acquainted with the dogs and, based on that acquaintance, had no concerns about their dangerousness, whereas in this case the Baileys knew virtually nothing about Baxter. See *id.* ¶ 4. Those are the facts of *Gross*, and they are material to the issue of whether the landlord in that case "should have known" that the dogs were dangerous. The *Gross* Court

nowhere rules, however, that those facts are a necessary predicate to the landlord's lack of a duty to investigate, and the decision is clear that they are not. The record either includes evidence of actual knowledge or that could reasonably satisfy the should-have-known standard or it does not. *Gross* controls this case. Because a landlord's duty in a case such as this is clearly established by *Gross*, Ms. Higgins' efforts at establishing a different, more protective duty are ineffectual.[2]

The issue in this case, as in *Gross*, thus turns from the law to the evidence. To survive summary judgment, Ms. Higgins had to come forward with "admissible evidence from which a jury could conclude that <u>at the time of entering the lease</u>, [the Baileys] knew or had reason to know [that Baxter] posed an unreasonable risk" to non-tenant, third-parties such as Ms. Higgins. *Gross v. Turner*, 2018 VT 80, ¶ 15, 208 Vt. 112.

The record of this case is reasonably clear that the Baileys knew virtually nothing about either Mr. Bagalio or Baxter before they moved into the leased premises. The rental unit was being leased by a different tenant, who surprised the Baileys by terminating her lease early. The Baileys had recently moved out of state. The departing tenant agreed to try to find a replacement tenant, and so identified Mr. Bagalio as a prospect.

There is good evidence that the Baileys knew, prior to the inception of the tenancy, that Mr. Bagalio had a dog and intended that Baxter would live at the leased premises. There also is evidence to the effect that Baxter had viciously attacked a child in the recent past. There is no evidence that the Baileys actually knew that Baxter had ever behaved dangerously and there is no evidence that should have reasonably caused them to infer that he was dangerous. Ms. Higgins argues that the departing tenant and the Baileys' real estate agent both were the Baileys' general agents and thus anything they knew about Baxter was attributable to the Baileys. Among the problems with this argument is that there is no material evidentiary support of record to the effect that either knew, prior to the inception of the lease, that Baxter was dangerous. The attack evidently occurred shortly after Mr. Bagalio and Baxter moved in.

As in *Gross*, it may well be that the Baileys, had they simply inquired, would have learned that Baxter had recently attacked a child, and that presumably would have put them on clear notice as to his dangerous propensity. But the evidence is clear that they did not do so, and the law is clear that they did not have a duty to do so.

---

[2] The court notes that nothing in *Gross* or in the record of this case indicates that either landlord is a "professional" landlord who manages a large number of units and may be subject to different standards and expectations as a result. Ms. Higgins' expert is such a professional landlord, and he makes no distinction between an amateur landlord and a professional landlord, the type or configuration of rental housing at issue, etc. Implicit in his statement that landords should inquire about the nature of animals on premises is the self interest of landlords in the protection of their property from harm as much as protecting others. Such facts point out areas of potential distinction with *Gross* in other cases, though they do not apply here. Otherwise, to the extent that Ms. Higgins finds the *Gross* Court's assessment of the competing policy interests insufficiently protective of third-party rights, her remedy is to seek a change in the law, either before the Vermont Supreme Court or the legislature. The trial court does not simply disregard binding precedent no matter how much it might disagree with its wisdom. "Until a [higher] court . . . revokes a binding precedent, a [lower] court . . . is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." *Eulitt ex rel. Eulitt v. Maine, Dept. of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004).

Finally, Ms. Higgins generally claims (with little explanation) that the Baileys are liable under a Marshfield civil ordinance regulating domestic pets. Ms. Higgins presumably intends that the Baileys were "keepers" of Baxter under the ordinance since they obviously were not owners. The ordinance does not define landlords to be the keepers of their tenants' pets. More generally, keepership "requires a person to exercise a similar degree of control and care for a dog as its owner." *Gross v. Turner*, 2018 VT 80, ¶ 23, 208 Vt. 112. There is no evidence that the Baileys were Baxter's keepers. Even if there were some other way that the ordinance could trigger tort liability, it does not apply to the Baileys.

There is no evidence from which a jury could reasonably find that the Baileys breached any duty causing Ms. Higgins' injuries.

ORDER

The Baileys' motion for summary judgment is granted. Defendant to prepare a final judgment order for the court's execution.



Robert R. Bent,
Judge

Notifications:
Steven A. Adler (ERN 4209), Attorney for Plaintiff Katherine Higgins
John E. Brady (ERN 1882), Attorney for Defendant Shawn Bailey
John E. Brady (ERN 1882), Attorney for Defendant Suzan Bailey