Filed 05/28/24

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT  05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 226-9-18 Oscv

---

Mason vs. Moore-Lamphere

---

## FINDINGS, CONCLUSIONS, AND JUDGMENT

On June 12, 2017, Defendant John Moore-Lamphere attempted to drive a John Deere tractor onto a trailer.  At the last minute, the trailer slid to the left and pinned its owner, Plaintiff Paul Mason, between the trailer and the pickup truck to which it was hitched.  Plaintiff Mason sustained severe physical injuries that required hospitalization and has required him to receive continuing medical care to this day.  Plaintiff Mason has filed the present action alleging that Defendant Moore-Lamphere's negligence caused the crash and Plaintiff's injuries.  Defendant denies that he was responsible for the crash and contends that while both parties were equally at fault, it was first and foremost an accident.

This matter was tried before the Court on March 22, 2024 as a bench trial.  Both parties presented testimony and evidence in support of their positions.  Based on the evidence, testimony, and legal memoranda submitted by the parties and admitted, the Court makes the following findings and conclusions.

### *Findings of Fact*

On June 12, 2017, Plaintiff Paul Mason traveled in his Dodge Ram truck to Defendant John Moore-Lamphrere's property located at 64 Moore Lane in Irasburg.  Plaintiff was towing a flat-bed, gooseneck trailer.  The trailer attached to the truck by a ball hitch located inside the bed of the truck. This point of connection allowed the trailer to swing widely on either side of the truck and well-beyond what a rear hitch would permit.

The purpose of Plaintiff's trip was to load and transport a John Deere model 6210 tractor from Defendant's house to a mechanical shop for repairs.  The tractor had an open seat—no roof or windows around the driver's seat.

Order
226-9-18 Oscv Mason vs. Moore-Lamphere

Page **1** of **7**

Plaintiff's trailer had electric brakes on all four of its tires as well as rear runner and brake lights. Both the brakes and the lights were wired to Plaintiff's truck through a system that plugged from the trailer into the truck. From the cab of the truck, Plaintiff could control the trailer's brakes and brake lights by pushing the truck's brake pedal. There is no dispute that Plaintiff properly hitched and wired the gooseneck trailer to his truck on June 12th and that the trailer's brakes and brake lights functioned properly at that time.

Upon his arrival, Defendant met with Plaintiff. The two men briefly spoke with each other about the job, but they did not go through any plans or protocols for loading the tractor on to the trailer or any special features with the trailer. Both men have extensive experience with trucks and trailers. Plaintiff has experience with various types of trailers as well as loading and towing large equipment. Defendant has worked for decades driving tractor-trailers and has held a commercial driver's license.

Following their brief conversation, Plaintiff moved his truck and trailer to a mostly flat area on the public road just beyond Defendant's driveway. Plaintiff parked the truck, turned it off, and exited the truck cab. Defendant then drove the tractor behind the parked trailer and left it running. Plaintiff secured two ramps at the rear of the trailer.

At this point, the truck, trailer, ramps, and tractor were aligned. The tractor had been positioned a few feet behind the ramps and its wheels were positioned in line with the center of each ramp. To load the tractor onto the trailer, someone had to drive the tractor up two ramps and onto the bed of the trailer. This required a sharp burst of acceleration in the tractor to overcome the initial inertia and build enough momentum to safely climb the ramps.

Defendant agreed to perform this part of the job and to drive the tractor onto the trailer. After securing the ramps to the trailer, Plaintiff instructed Defendant, who was sitting in the driver's seat of the tractor with the engine running, "Don't touch that trailer until I get inside my truck." Plaintiff needed to get inside his truck so he could turn it on and push the brake pedal to engage the front brakes of the truck and the trailer's brakes. The trailer was not chocked, and the brakes were the only way to secure the trailer during loading.

The rear brake lights of the trailer and the ramps as well as the driver's side door of Plaintiff's truck and Plaintiff himself were visible to Defendant and within his plain view from his seat in the tractor. After shouting instructions at Defendant, Plaintiff turned and walked to his truck, opened the

driver's side door, and reached inside to pull himself into the cab. Before Plaintiff got his feet off the ground to get inside the cab, Defendant started driving the tractor onto the ramps.

The weight and force of the tractor driving up the ramps on the unsecured trailer caused the front end of the trailer to jerk up and lift the rear tires of Plaintiff's truck off the ground. This caused the truck and trailer to lurch forward, and the trailer to swing to the left and jackknife into driver's side of the truck. This pinned Plaintiff between the truck and the metal frame of the trailer. The truck came to rest when it hit a utility pole.

Plaintiff credibly testified that he did not signal or verbally instruct Defendant to begin loading the tractor at any time. When Defendant moved the tractor forward, Plaintiff had his back to Defendant and the trailer. He did not see Defendant start to move forward. Plaintiff did not see or hear Defendant begin to move forward.

Similarly, Defendant's eyes were focused on the trailer ramps when he began loading the tractor, and he did not check if Plaintiff was inside his truck. Defendant did not look to see if the brakes were engaged.

Defendant has claimed that he saw what he interpreted to be a signal from Plaintiff, which caused him to start the tractor. This testimony was inconsistent with both his in-court testimony and his prior statements, and it appears, at best, to have been Defendant's observation of Plaintiff reaching up into the cab.

Directly after the accident, first responders on the scene transported Plaintiff by ambulance from the scene of the crash to North Country Hospital and, after suffering respiratory failure, he was intubated and airlifted Dartmouth-Hitchcock Medical Care for a higher level of trauma care. He was hospitalized at Dartmouth-Hitchcock Medical Care from June 12, 2017 to June 29, 2017.

Plaintiff sustained the following injuries as a result of the crash: (1) crush injury to trunk-chest, (2) respiratory failure, (3) multiple bilateral rib fractures, (4) bilateral pulmonary contusions, (5) bilateral hemothorax, and (6) severe chest, rib, and back pain.

Plaintiff's undisputed past medical charges equal $238,374.28. Plaintiff has and continues to suffer severe back pain and receives ongoing medication treatment for pain management. He requires oxygen to sleep at night, and he has limited mobility and decreased strength. He is unable to perform many of his activities of daily living such as doing repairs around his house, refilling his wood pellet

stove, retrieving his mail from the mailbox, and going grocery shopping without the assistance of a motorized cart.

He has had to forgo many of his favorite hobbies including riding his motorcycle, ATVs, and snowmobiles. He cannot go fishing or work on his 1970 Pontiac GTO.

At the time of the incident, Plaintiff worked part-time for St. Onge Custom Harvesting & Snowplowing Inc. driving a truck transporting feed and manure. He earned $4,862.33 in annual wages on average. Mr. Mason has been unable to return work due to his injuries from the crash and has lost approximately $34,036.33 in wages between June 2017 and present date ($4,862.33 per year). Finally, Plaintiff's Dodge Ram truck sustained totaling damage in the crash. Plaintiff spent approximately $2,500 to replace his truck. Plaintiff also seeks $200,000 in future pain and suffering.

Based on the testimony, the Court finds that the parties never established a protocol for loading the tractor onto the trailer. Plaintiff never laid out the steps that he expected Defendant to follow, and Defendant never inquired. While Plaintiff relied on his trailer's electric brakes, Defendant credibly testified that trailers often have chocks put into place to prevent them from rolling or buckling. This meant that the process of securing the trailer was not clear to the parties at the outset.

Notwithstanding this lack of clarity, the evidence shows that Defendant failed to take reasonable steps at three points leading up to the incident. First, Defendant presumed that the trailer had chocks, but he never confirmed them, and the fact that he was near the Plaintiff suggests that he should have seen such chocks being placed or been aware of their absence when Plaintiff did not put them down. Second, Plaintiff did not look for a clear and unambiguous signal from Plaintiff before starting. The evidence indicates that he mistook Plaintiff's reaching up into the cab as a signal to go. The Court finds that this was not a credible signal, given the lack of pre-loading conversations. Defendant acted without a clear signal or permission. Third, Defendant did not make any independent inquires before he drove the tractor. While the task may have appeared to be simple and straightforward to an experienced tractor-trailer driver, Defendant took no steps to confirm with Plaintiff or to determine if Plaintiff was ready for him to quickly accelerate a large piece of machinery onto Plaintiff's trailer.

Plaintiff also had an obligation to exercise a reasonable duty of care and failed to take two reasonable steps. First, he did not go through the loading process or the fact that he needed to be in the cab prior to the start of the loading project. Second, when he did shout instructions at Defendant, he

did so while the other was in the tractor and its engine limited Defendant's ability to hear. Plaintiff had a duty to exercise reasonable care because while Defendant was driving the tractor, the entire loading and towing process was Plaintiff's process. It was his trailer and his ramps. Defendant was acting, to a degree, at Plaintiff's direction. The Court finds that these failures constitute contributory negligence on Plaintiff's part. *Barber v. LaFromboise*, 2006 VT 77, ¶ 7.

## *Conclusions of Law*

Based on the evidence, Defendant John Moore-Lamphere had a legal duty to operate and load the tractor onto Plaintiff Paul Mason's trailer with reasonable care. *Gross v. Turner*, 2018 VT 80, ¶ 27 (citing Restatement (Second) of Torts § 324). In this case, Moore-Lamphere agreed to help out by agreeing to load his tractor onto Plaintiff's trailer. Plaintiff relied on Moore-Lamphere to act with reasonable care. Moore-Lamphere did not. He failed to check the trailer for chocks or confirm with Plaintiff how the trailer was secured. He failed to work out the process for when he would put the tractor into gear, and he failed to make even cursory contact with Plaintiff or confirmation that Plaintiff was ready for Moore-Lamphere to go forward. The Court further concludes that the resulting incident and Plaintiff Mason's injuries are a direct and proximate result of Defendant's actions.

Under 12 V.S.A. § 1036, the Court has also found that Plaintiff had a duty exercise reasonable care in overseeing and directing the loading process, and that his actions constituted contributory negligence through his failure to exercise reasonable care to clarify with Defendant and to explain that the trailer needed an operator in the cab of the truck before it was safe to load and to not establish a clear signal or to confirm his last-minute shouted warning before walking away from the tractor toward the cab. The Court finds that these actions also directly and proximately cause the incident leading to Plaintiff's injuries.

In applying the comparative negligence statute, the Court looks to two factors. First, it looks to the nature and context of the incident. In this respect, Defendant Moore-Lamphere is more culpable. He had an unobscured view of the trailer, its brake lights, Plaintiff Mason, and the truck cab. His decision to launch onto the ramp without a signal and while Plaintiff was still moving into the truck cab is the primary action leading to the trailer jackknifing into the truck and injuring Plaintiff. Yet, this entire of chain of events goes back to the parties' initial conversation when both men, but particularly Plaintiff had an opportunity and duty to work out the details of how they were going to load the tractor in a safe manner. Second, the Court looks to who had the last, best opportunity to prevent this incident. In this respect, Defendant had the last, best opportunity to avoid the incident because he had

Order
226-9-18 Oscv Mason vs. Moore-Lamphere

Page **5** of 7

control of the tractor and the best view of the parties to where each was and whether there were any indicia that the trailer was secure and ready to load.

For these reasons, the Court assigns Plaintiff 70% responsibility and Defendant 30% responsibility. Since the damages are not disputed, the Court will grant judgment to Plaintiff for all damages sought, as reduced by the finding and conclusion of 30% contributory negligence.[1]

## ORDER

The Court Orders and Adjudges that Plaintiff Paul Mason shall have Judgment against Defendant John Moore-Lamphere as follows:

| | |
|---|---|
| Past Medical Charges: | $238,374.28. |
| Lost Wages: | $34,036.33. |
| Property Damage: | $2,500. |
| Past Pain and Suffering: | $425,089.39. |
| Future Pain and Suffering: | $200,000. |
| Sub-Total: | $900,000 |
| Contributory (30%) | ($270,000) |
| **Total Damages Awarded:** | **$630,000** |

Plaintiff Mason shall prepare a final judgment with allowed court costs and filing fees as permitted under V.R.C.P. 54.

Electronically signed on 5/24/2024 5:47 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge

---

[1] Plaintiff is entitled to both compensatory damages (medical expenses, lost wages, property damages) and current and future pain and suffering damages. *Smedberg v. Detlef's Custodial Service*, 2007 VT 99, ¶ ¶ 5–12 (allowing a new trial where a jury improperly awarded compensatory damages without pain and suffering damages when there was evidence of both).

Order
226-9-18 Oscv Mason vs. Moore-Lamphere

Page **6** of **7**

Electronically signed pursuant to V.R.E.F. 9(d)

_Sean C. Selby_

_____
Sean C. Selby
Assistant Superior Court Judge